29 C.C.P.A.(Patents)

**HAAS et al. v. BAKER.**

**Patent Appeal No. 4565.**

Court of Customs and Patent Appeals.
March 23, 1942.

502

George I. Haight, of Chicago, Ill., J. Austin Stone, of Washington, D. C., and M. K. Hobbs, of Chicago, Ill., for appellant.

Watson, Bristol, Johnson & Leavenworth, of New York City (Clair V. Johnson, of New York City, of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

Appellants, Haas and Bohn, joint inventors, by appeal bring before us for review the decision of the Board of Appeals of the United States Patent Office affirming that of the Examiner of Interferences awarding priority in an interference proceeding to appellee, Baker, upon a single count which reads: "A product for baking purposes which comprises a wheat flour mixed with a small quantity of ground vegetable matter containing an active carotin-removing enzyme."

The real parties in interest appear to be Standard Brands Incorporated, as assignee of appellee, and J. R. Short Milling Company, as assignee of appellants.

The interference was declared between an application of appellee, serial No. 264,567, filed March 24, 1928, and a patent, No. 1,957,333, issued to appellants May 1, 1934, on an application, serial No. 310,673 filed October 5, 1928. The application of appellants having been filed subsequent to that of appellee the burden rested upon them to establish priority by a preponderance of evidence.

The pertinent history of the proceedings may be briefly stated as follows: On June 18, 1935, appellee copied into his application a number of claims embraced in the patent which had been issued to appellants on May 1, 1934, and requested declaration of an interference. The Primary Examiner rejected all the claims upon which an interference was sought as not readable on appellee's disclosure, and refused to declare one. Appellee appealed ex parte to the board which affirmed the examiner as to all except one of the claims (numbered 13 in the patent and 40 as added to appellee's application on June 18, 1935) which became the count now at issue. As to that claim, the examiner was reversed and following this action the interference was declared. The respective parties filed their preliminary statements and appellants moved to dissolve, assigning substantially the same grounds as those upon which the Primary Examiner originally had refused to declare the interference. The Primary Examiner sustained the motion. Appellee then appealed to the board which reversed the decision of the Primary Examiner and the parties proceeded to take testimony. At the hearing appellants, in the exercise of their legal privilege, again raised the question of appellee's right to make the count, to which, it may be said, much of the testimony on behalf of both parties related. The Examiner of Interferences sustained his right to make it and upon appeal the board affirmed. We have omitted here the recital of a number of motions, petitions for rehearing, reconsideration, etc., as not material to the history of the proceeding.

From the foregoing outline of the history of the case it may be discerned that appellants have not failed to prosecute the controversy with much vigor and earnestness, and it will be observed that the Board of Appeals in at least three separate decisions, rendered at different times, held adversely to the contention of appellants respecting appellee's right to make the count which, as later will appear, is the ultimate issue involved in the controversy. Two of the board's decisions were rendered upon a construction of the language of the count considered independently of any testimony relating to it, and the third was rendered after the testimony had been taken and in the light thereof.

Appellants' patent from which appellee copied the several claims is entitled "Bleaching Agent and Process of Utilizing the Same for Bleaching Flour." The application of appellee into which the copied claims were inserted is entitled "For Making of Bread." Each of the claims copied from the patent, except the one which became the count of the interference, contained phraseology which the board in its decision on the ex parte appeal construed to constitute a limitation involving bleaching and appellee was denied the right to them because, in the board's view, the specification of his application failed to make any disclosure which would support that limitation. With respect to the claim which became the count of the interference, however, the board said:

"Claim 40 is very broadly worded, there is no reference to bleaching or unbleached flour and the clause relating to carotin removing enzymes does not require that enough of it be present to remove all the carotin but merely that it be a small quantity of ground vegetable matter containing an active carotin removing enzyme. We believe applicant is entitled to make claim 40."

In its final decision from which the instant appeal was taken, the board said inter alia:

"The count is taken from the patent No. 1,957,333 of the appellant. The said patent emphasizes as a primary object the bleaching of flour simultaneously with the process of making bread therefrom or as specifically stated, treating under conditions of moderate warmth and moisture during mixing and baking of products of the flour. It is stated, however, that the material which serves as a bleaching agent also has nutritive value being entirely of vegetable origin as prepared from soy beans.

"Both parties combine a soy bean product in the way of ground soy bean with the flour. The patentee sets forth the theory that the yellow color of flour is due to the substance carotin and that the soy bean flour specifically acts upon the carotin. The party Baker does not set forth this theory but claims that he has discovered that soy bean flour improves the quality of bread produced from wheat flour in several respects. The patent contains thirty-eight claims of varying scope, mostly it is true, referring to bleaching effect. It is urged in one instance that the present count (claim 13 of the patent) should be likewise so construed, in effect, reading into it some limitations concerning bleaching. It is accordingly one of the main contentions that since Baker does not refer to bleaching or carotin removal he should not be entitled to make the count.

"We have very carefully considered the discussion set forth in appellant's brief together with the very clearly presented oral argument at the hearing but are still of the opinion that claim 13 is broadly worded and was undoubtedly intended to be broad not necessarily limited to any bleaching effect but intended to include other beneficial results that are named in the patent due to employment of soy bean flour or equivalent vegetable matter. The count is broad even in respect to removing carotin in not requiring that even any carotin be removed, but merely that the added vegetable matter contains an active carotin-removing enzyme. Concerning addition of other materials, Baker may use soy bean meal alone but other materials are not excluded by the count. The count employs the word 'comprises' in respect to the flour mixture in general and the word 'containing' in referring to the vegetable matter as merely containing carotin-removing enzyme. Neither of these words is regarded in the practice as being exclusive of other possible agents—Ex parte Rawles, 1930 C.D. 15; In re Gray, Cust. & Pat.App., 53 F.2d 520, 1932 C.D. 85. This follows from the scope as merely defined by the dictionaries.

"We regard this situation as being one wherein a broad claim has been included in the patent with the object of securing broad scope of protection but unfortunately broad claims are correspondingly subject to greater risk of being invalid or capable of being made by other parties as in the present case. We believe it is pertinent to observe here as is often done in determining patentability by comparison to infringement, that the patentee would no doubt regard Baker as an infringer of claim 13 in a situation wherein his dates were later and where such conclusion would be otherwise possible and in case Baker had been found following the direction of his specification of putting soy bean flour in wheat flour regardless of theories."

In the appeal to us appellants stated numerous reasons of appeal which need not be set forth in detail. In their brief their contentions as to the law and facts are summarized quite tersely, and many au-

thorities are cited which are claimed to support their position. The argumentative part of the brief, however, is prolix and repetitious.

It seems to us that the decision of the controversy must turn upon the interpretation given the count, although, as a secondary matter, appellants insist that appellee "cannot support the count, however interpreted."

With respect to the interpretation of the count, appellants' position is that since the patent from which it was taken "is limited to bleaching, Baker by every rule of construction, is likewise limited," and it is asserted that the claims added to appellee's application "to provoke the interference were intended to cover bleaching."

The brief (we omit the authorities cited) then states:

"a. A count of an interference is to be interpreted in the light of the specification wherein it found its origin.

\*    \*    \*    \*    \*

"b. A count cannot be interpreted in disregard of the limitations therein.

\*    \*    \*    \*    \*

"c. The count cannot be interpreted to make Baker an interloper in the art.

\*    \*    \*    \*    \*

"d. A count of an interference will not be interpreted to run the claim afoul of the prior art, even though this court will not consider whether the limitations add patentability.

\*    \*    \*    \*    \*

"e. Intent is the cardinal rule of construction. Baker made emphatically clear his intent to limit his claim 40 to bleaching."

We will discuss the foregoing matters substantially in the order stated in appellants' brief.

It seems to us that the inclusion in the patent of the claim which became the count does not appear to be wholly consistent with the contention that the patent was *limited* to bleaching. Certainly there is no express language in the count which so limits it and it would be necessary to read language into it in order to accomplish that end. Appellants seem to be in the position of asking the court to do by construction, or interpretation, what they readily might have done, but did not do, by the insertion of a single word, or at most a brief pertinent phrase into their claim 13 (now the count).

■  With respect to the statement reading, "A count of an interference is to be interpreted in the light of the specification wherein it found its origin," it is sufficient, for the purposes of this case, to say that when there is ambiguity in a count copied from a patent it is proper to interpret the count in the light of the patent specification, but we find no ambiguity in the count at issue.

■  Appellants' statement, "A count cannot be interpreted in disregard of the limitations therein," is broadly correct, but the particular limitation necessary to sustain appellants' position here is not expressed in the count. Appellants seek to have it inserted by construction and then interpreted as a part of the count. Neither the Examiner of Interferences nor the board disregarded any limitation expressed in the count. They declined, we think correctly, to insert a limitation which was not expressed therein.

Appellants' statement reading, "The count cannot be interpreted to make Baker an interloper in the art," as written, has little meaning to us. The authorities cited in connection with the statement are decisions of this court in the case of Cover v. Schwartz, 116 F.2d 512, 28 C.C.P.A., Patents, 831, and Sherman v. Johnson, 117 F.2d 266, 28 C.C.P.A., Patents, 870, wherein references were made to *counts* (not to the individuals seeking to make the counts) as interlopers. In both those cases we cited the case of Cleveland Gas Burner & Appliance Co. v. American Heater Corp., 38 F.2d 760, 763 (an infringement proceeding), in which the United States Circuit Court of Appeals of the Eighth Circuit, said: "\* \* \* we are strongly of opinion that *claim* 5, as taken bodily from the copending application, is an interloper in this patent, and finds no suggestion or support in the specification. It is like the cowbird's egg deposited in the nest of another bird. It simply 'does not belong.'" (Italics ours.)

In our decisions in the cases cited we, of course, used the word "interloper" as applicable to the counts there involved just as it was used by the Circuit Court of Appeals as applicable to the claim involved in the case before it.

We assume that what appellants intended to assert in the statement quoted was that the involved *count* is an interloping count in the *bleaching* art. As of course, if there should be read into it the limitation to

bleaching upon which appellants insist, it would be in the same category as the several claims which were denied appellee below and, therefore, properly might be designated as "interloping," but, as has been indicated, we see no sound reason for reading any such limitation into the count.

To follow the simile used by the Circuit Court of Appeals, appellee here, in our opinion, provided a "nest" for the count in his own application as filed and is not in the attitude of a cowbird depositing its egg in the "nest" of another—in this case, the "nest" of appellants. That is to say, the count as written is amply supported by his statements contained in appellee's application as filed.

In support of their contention that "A count of an interference will not be interpreted to run the claim afoul of the prior art, even though this court will not consider whether the limitations add patentability," appellants cite our decision in the case of In re Repogle, 70 F.2d 375, 21 C.C.P.A., Patents, 1068. We fail to discern the applicability of that decision to this case. In that case Repogle had copied a claim from a patent seeking an interference. A limitation had been inserted into the claim by the patentee during the prosecution of the application in order to avoid prior art. The construction of Repogle did not disclose a device which embraced the limitation and we held, affirming the decision of the Board of Appeals which had affirmed the decision of the Primary Examiner, that, under the circumstances recited, the limitation could not be disregarded, irrespective of whether it added patentability to the claim as originally presented, citing the cases of Field v. Stow, 49 F.2d 840, 18 C.C.P.A., Patents, 1437, and In re Creveling, 61 F.2d 862, 20 C.C.P.A., Patents, 701. In the instant case the record does not disclose that any limitation was inserted in the claim, which became the count, for the purpose of avoiding prior art, and under the well settled practice it is not our function, under a state of facts such as exists here, to determine the question of patentability.

The contention to the effect that appellee made it clear that it was his intent to limit the claim, which became the count, to bleaching and that "Intent is the cardinal rule of construction" presents, in the first instance, a question of fact (the matter of intent being one of law dependent upon the facts) and is clearly related to the contentions made in connection with what we have designated "the secondary" position of appellants, viz., that appellee "cannot support the count, however interpreted."

As has been indicated, much of the evidence introduced relates to the question of appellee's right to make the count; that is to say, it was directed to a showing of facts (aside from the statements, or in the interpretation of the statements, contained in the respective applications) upon which the right might or might not be predicated. Much of the evidence is of a technical nature directed to the meaning of terms such as "enzymes," "carotin-removing," "urease," etc., and the application of those terms in the art of flour-bleaching and bread-making.

Appellants, in what we have designated the secondary part of their contention, insist that appellee had no conception, prior to the issuance of appellants' patent, "of the existence of the carotin-removing enzyme for any function"; that appellee's "contemporaneous records disclose that his sole interest in the use of the soy bean was as a well known source of urease, desired by Baker to control and regulate yeast fermentation"; that appellee "nowhere shows the presence of the carotin-removing enzyme, or that he had any knowledge of it, or that he ascribed any result to it," and that "The proofs show that the soy bean material used by Baker *probably* did not contain the bleaching enzyme." (Italics ours.)

If we were convinced from our examination of the extensive testimony, some of it of an expert character, that it was sufficient to sustain the foregoing contentions and thus require a reversal of the decision of the board, we should feel impelled to set it out here and specifically recite its pertinent parts but we are not so convinced. Therefore, it is unnecessary to lengthen this opinion by a recitation of it merely to demonstrate its insufficiency. The Examiner of Interferences made a more elaborate review of it than did the board, and from our careful examination of it, in the light of the arguments concerning it, we are satisfied with the correctness of his statement that:

"* * * Although the stipulated expert testimony in behalf of Haas and Bohn is to the effect that temperature will destroy the carotin-removing enzyme which is present in soy bean material this testimony definitely establishes that ground raw soy

beans necessarily contain the carotin-removing enzyme unless the enzyme is destroyed in the only familiar way, by heat. Consequently, the stipulated expert testimony in behalf of Haas and Bohn is conclusive that the soy bean material disclosed by Baker also necessarily contains the active enzyme required by the count in issue. Upon review of the Baker application it is found that the count is clearly supported thereby and as indicated herein this is not only not negatived by the testimony in behalf of Haas and Bohn but is confirmed thereby."

We have taken due note of appellants' insistence that appellee shifted ground relative to, as the board expressed it, "contentions as to whether bleaching should be regarded as the only subject of the invention." Of this the board said:

"While it is true that Baker originally made some contentions along this line, it was in connection with an attempt to make other claims in the patent definitely requiring bleaching.

"This does not preclude Baker from now making the broader claim corresponding to the count."

Appellants point to certain arguments made by appellee during the prosecution of his appeal which perhaps may be construed as claiming that even his claim 40 (the count) should be construed to cover bleaching, and, as has been indicated, the Primary Examiner seems to have taken that view and to have denied it to appellee for that reason. We fail to find in any of those arguments matter which would lead to the conclusion that appellee displayed an "intent" with respect to the construction of that one claim which, as a matter of law, under the authorities cited by appellants, should preclude him from asserting it.

■ Appellants are in the position of having procured in their patent a claim not limited by its terms to the flour-bleaching art. In so doing they, of course, were within their rights, or it must be so presumed in this proceeding, but when they did it they took the chance of coming in conflict with either some prior art, not cited against it at the time it was allowed them, or with an application of another party copending with their own.

■ While appellants' brief (like their reasons of appeal) is devoted almost wholly to the discussion of the matters above outlined, it does contain some argument relating to the dates of their conception and reduction to practice. No one of their reasons of appeal is specifically directed to those matters. The board said:

"It appears not seriously contested but that in case Baker can make the count, the controversy as to priority substantially disappears. However, we have considered this matter and state our conclusions for purpose of the record should our holding concerning the right of Baker to make the count be reversed.

"Baker's application was filed March 24, 1928. Appellant filed October 5, 1928 and has the burden of proof by preponderance of testimony.

"The proofs of the joint patentees indicate conception and possible reduction to practice we believe, no earlier than March 28, 1928. This is obviously too late to prevail and further is only very meagerly corroborated as to conception only of that date by Wolfe. We are in full agreement with the examiner's conclusions that Haas and Bohn cannot be accorded any date of conception prior to Baker's record date of March 24, 1928."

We concur in the board's finding in that regard, as we do in its conclusion respecting the other questions raised, and its decision is affirmed.

Affirmed.